# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ASHLEY NICOLE PUTMAN,**

      **Plaintiff,**

  v.                           Civil Action 2:20-cv-3895
                                 Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Ashley Nicole Putman, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to jurisdiction pursuant to 28 U.S.C. § 636(c). (*See* Docs. 6, 7). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff filed her applications for DIB and SSI in 2017, alleging that she became disabled on November 26, 2013. (Tr. 277, 281). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on May 29, 2019. (Tr. 32–72). The ALJ denied benefits in a written decision on July 29, 2019. (Tr. 12–31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6).

Plaintiff initiated this action on July 31, 2020 (Doc. 1), and the Commissioner filed the administrative record on December 23, 2020 (Doc. 12). Plaintiff filed her Statement of Errors

(Doc. 13) on February 7, 2021, which Defendant opposed (Doc. 14). Plaintiff did not file a Reply. Thus, this matter is now ripe for consideration.

**A. Relevant Hearing Testimony**

Because Plaintiff's Statement of Errors concerns only her mental health restrictions, the Court's summary and analysis focuses on the same. The ALJ summarized Plaintiff's pertinent testimony:

> [T]he claimant testified at the hearing to the following: . . . Mentally, she indicated that she has panic attacks and PTSD. She noted that she has panic attacks about four times per week, which are triggered by various social situations. She remarked that her PTSD is triggered by overly aggressive men. She noted that she has difficulty understanding what she has read. She reported that she has difficulty focusing on unfamiliar things. She stated that she has received counseling since January 2019 and has been prescribed Lexapro to treat her mental health symptoms.

(Tr. 21).

**B. Relevant Medical Evidences:**

The ALJ also summarized the relevant medical records:

> Mentally, the claimant has been diagnosed with major depressive disorder, generalized anxiety disorder, PTSD, and specific learning disorder with impairment in reading comprehension (Exhibits B9E, p. 8; B7F, p. 4; B8F, p. 22; and B17F, p. 5). The claimant has endorsed psychiatric symptoms, such as depressed mood, appetite and sleep disturbance, mood swings, crying spells, difficulty concentrating, anxiety, excessive worrying, panic attacks, irritability, racing thoughts, nightmares and flashbacks related to trauma (Exhibits B1F, p. 5; B7F, pp. 1, 3; B8F, pp. 1, 21, 82; B15F, p. 51; B17F, pp. 1, 3; and B19F, pp. 3, 15, 22). She has also reported problems with reading and writing (Exhibit B1F, p. 3). The claimant had an individualized education plan while in school and received special education services due to difficulties with written expression and math (Exhibit B9E, pp. 36, 37). Although the claimant currently has some reading comprehension issues, she is able to read (*See* Exhibits B1F, p. 3 and B7F, p. 4). Additionally, mental status examinations of record have largely been unremarkable, with a normal mood and affect, with only some noting a depressed or anxious mood (Exhibits B8F, pp. 11, 21, 32, 66; B11F, p. 4; B15F, pp. 7, 21, 52; and B19F, pp. 5, 13, 27). The claimant has been prescribed Lexapro, Klonopin, Trintellix, Viibryd, Vistaril, and other medications to treat her mental health symptoms (Exhibits B8F, pp. 5, 32; B15F, p. 6; B17F, p. 5; and B19F, p. 14). She reported improvement in her symptoms with medication (Exhibits B8F, pp. 10, 98 and B15F, p. 8). Despite

these diagnoses, the claimant has not required emergent treatment for an exacerbation of symptoms and she has not been hospitalized on a psychiatric basis (Exhibit B19F, p. 26).

(Tr. 22–23).

### C. The ALJ's Decision

The ALJ determined that Plaintiff met the insured status requirement through September 30, 2014, and that she had not engaged in substantial gainful activity since November 26, 2013, her alleged date of onset. (Tr. 17). The ALJ also determined that Plaintiff suffered from the following severe physical and mental impairments: chronic low back pain with sciatica; right knee sprain; irritable bowel syndrome; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and specific learning disorder with impairment in reading comprehension. (Tr. 18). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (*Id.*).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for four hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; can occasionally push, pull, and operate foot controls with right lower extremity; can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can frequently balance and stoop; can occasionally kneel, crouch, or crawling; can never work around unprotected heights or around dangerous machinery; and cannot perform commercial driving. Mentally, the claimant is able to perform simple and occasionally complex routine, repetitive tasks, but not at a fast production rate pace and with no strict production quotas; can have occasional interaction with co-workers, but no tandem or shared tasks; can have occasional interaction with supervisors, but no over the shoulder supervision; and can have occasional interaction with the public, but not in a customer service capacity.

(Tr. 20). When assessing Plaintiff's RFC, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with

3

the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21). As discussed more fully below, the ALJ also considered administrative findings about Plaintiff's mental impairments from consultative examiners and reviewers and found them unpersuasive. (Tr. at 23–24).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a stocker, sales attendant, or housekeeper, but could perform the duties of other unskilled, light exertional occupations that existed in significant numbers in the national economy such as sorter, labeler, and packager. (Tr. 25). Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act, since November 26, 2013. (Tr. 26).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x. 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence,

it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts that the ALJ's RFC is not supported by substantial evidence. (Doc. 13 at 5–8). Specifically, Plaintiff argues that because the ALJ discounted the medical opinions (i.e., administrative findings) from the state agency consultative examiners and reviewers, she must have impermissibly relied on her own lay opinion when assessing Plaintiff's RFC. (Doc. 13, at 6). Plaintiff also asserts that the RFC does not adequately account for her concentration, persistence, and pace limitations. (*Id*. at 10). Both assertions of error lack merit.

### A. Administrative Findings and RFC

Plaintiff argues that the ALJ erred by discounting administrative findings and relying on her own lay opinion when assessing Plaintiff's RFC. (*Id*. at 9). The Court disagrees.

*1. Administrative Findings*

Because Plaintiff filed her application after March 27, 2017, it is governed by the new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence

from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . . . " §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1).

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

In this case, several sources offered opinions on Plaintiff's mental health. As discussed, the ALJ did not err with regard to any.

a. Dr. Sarver

To start, Dr. Gary Sarver consultatively examined Plaintiff on August 12, 2013. (Tr. 424– 31). The ALJ discussed Dr. Sarver's findings.

> The opinion of Gary S. Sarver, Ph.D., an independent psychological consultative examiner, is not persuasive (Exhibit B1F). Although his indication that the claimant has limitations in all areas of mental functioning is generally consistent with the evidence, he does not provide a sufficiently specific function-by-function assessment of the claimant's limitations. Furthermore, he rendered his opinion more than three months prior to the claimant's alleged onset date, thus his opinion does not relate to the period at issue in this case and is not consistent with or supported by the medical evidence of record. Therefore, Dr. Sarver's opinion is not persuasive.

(Tr. 23–24). The Court finds no error in this assessment. As is evident from the ALJ's discussion, the ALJ considered the consistency and supportability factors and found them wanting because Dr. Sarver's findings pre-dated Plaintiff's alleged date of onset and lacked requisite specificity. Although the Sixth Circuit Court of Appeals "'do[es] not endorse the position that . . . medical records predating the alleged date of onset of disability" are automatically irrelevant, it has never held that an AL *must* consider dated evidence. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x. 411, 414 (6th Cir. 2006).

Additionally, as the ALJ notes, Dr. Sarver did not provide any specific functional limitations. Dr. Sarver wrote that Plaintiff would have "no particular difficulty" in understanding, remembering, or carrying out simple job instructions but that it was "likely" that she would have difficulties in other areas. (Tr. 430). Dr. Sarver's findings that Plaintiff was "likely" to have

7

difficulties does not provide a clear statement as to what particular difficulties Plaintiff would have or what specific job functions she would be capable, or incapable, of performing. *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x. 472, 476 (6th Cir. 2008) (finding that an ALJ did not err by rejecting the portion of a medical opinion that he characterized as vague); *Dillard v. Comm'r of Soc. Sec.*, No. 2:17-cv-781, 2018 WL 4691053, at *6 (S.D. Ohio Oct. 1, 2018) (finding that ALJ did not err by discounting a medical opinion in part because it was vague; opinion that plaintiff "might" have difficulties was not specific about the particular difficulties plaintiff would have).

   b. Counselor Sours

Additionally, Floyd P. Sours, an independent psychological consultant, examined Plaintiff on September 11, 2017. (Tr. 646–51). The ALJ discussed those findings.

> The opinion of Floyd P. Sours, M.A., an independent psychological consultative examiner, is not persuasive (Exhibit B7F, p. 6). His indication that the claimant generally has mild limitations in mental functioning is not consistent with or supported by the medical evidence of record. The record shows that the claimant has required psychotropic medication in order to treat mental impairments, which is more consistent with moderate limitations. Additionally, stating that the claimant has "limitations" or "mild limitations" is not sufficiently specific to be helpful in creating the residual functional capacity. Therefore, Mr. Sours' opinion is not persuasive.

(Tr. 24). The Court also finds no error in this assessment. The ALJ concluded that although Counselor Sours found that Plaintiff had only mild limitations, Plaintiff actually had greater limitations—moderate instead of mild. An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined. *See Mosed v. Comm'r of Soc. Sec.*, No. 2:14–cv–14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) *report and recommendation adopted*, 2016 WL 1084679 (emphasis in original) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing."); *see*

8

*also Taylor v. Berryhill*, No. 3:17cv–00200–DW, 2018 WL 344984, at *4 (W.D. Ky. Jan. 9, 2018) (emphasis in original) ("[The ALJ] gave both Dr. Sadler's State agency opinion and Dr. Carter's consultative examination opinion only partial weight because he assessed a *more restrictive* RFC than either physician. If anything, [the ALJ's] decision to afford partial weight to the opinions of Dr. Sadler and Dr. Carter benefitted [the plaintiff's] case and, therefore, does not constitute error."); *Chess v. Berryhill*, No. 2:17–cv–00163, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019) ("[T]he ALJ's decision to 'reject' the opinions operated to [the plaintiff's] benefit. This does not constitute error.").

   c. State Agency Psychologists

Finally, state agency psychologists, Karla Delcour and Cindy Matyi reviewed Plaintiff's file in 2017. (Tr. 94–96, 115–17, 138–40, 159–61). The ALJ also discussed those findings.

> The State agency psychological consultants' mental assessments are not persuasive (Exhibits B2A, B3A, B6A, and B7A). While some of their mental residual functional capacity is generally consistent with the evidence, the severity of some of their assessed limitations are not consistent with or supported by the medical evidence of record. For example, their statement that the claimant may benefit from an isolated work station and supervisory support when first learning job tasks is not supported by the evidence. While the claimant has some social limitations, there is no evidence to suggest that she is unable to work in proximity to others. Additionally, although the claimant has some reading comprehension issues, the record does not reflect the need for supervisory support in her past work history and she does not appear to have trouble learning new things. Therefore, the State agency mental assessments are not persuasive.

(Tr. 23). Again, the Court finds no error in this assessment. The ALJ considered the consistency and supportability factors and determined that some of the findings were not consistent with or supported by the record. Specifically, the ALJ determined that there was no evidence to support Dr. Matyi's finding that Plaintiff "may" benefit from an isolated workstation. (*Id*.). After a thorough review of the record, the Court finds that substantial evidence supports that

9

determination. The record is bereft of any evidence that Plaintiff is unable to work in proximity to others. Indeed, although Plaintiff reported in 2013 that she did not "get along with the public," she also reported that she got along with coworkers and supervisors "if they treated her with respect," and reported in 2017 that she "did get along on the job with people." (Tr. 426, 648). The ALJ also determined that there was no evidence to support Dr. Matyi's finding that Plaintiff "may" benefit from supervisory support when first learning job tasks. (Tr. 223). Substantial evidence also supports that determination—the record contains no evidence that Plaintiff required such support at her previous jobs. As the ALJ notes, although the record contains evidence that Plaintiff has reading issues, there is no evidence that she had issues following directions during any of her examinations. (Tr. 768). To the contrary, she could follow directions readily during at least one of them. (*Id.*).

2. RFC

More broadly, Plaintiff asserts that the ALJ impermissibly played doctor by crafting the RFC after finding none of the administrative findings were persuasive. (Doc. 13 at 9–10). Essentially, Plaintiff is saying that an ALJ's RFC determination can be supported by substantial evidence only when it corresponds to a persuasive medical opinion or administrative finding. The Court does not agree.

The Sixth Circuit's decision in *Rudd v. Commissioner of Social Security* provides guidance here. 531 F. App'x. 719, 727–28 (6th Cir. 2013). In that case, the plaintiff asserted that the ALJ's RFC determination was not supported by substantial evidence. *Id.* Specifically, the plaintiff emphasized that a state agency reviewing physician opined that the plaintiff "could only stand and/or walk for two hours in an eight-hour day." *Id* at 727. The ALJ, however, did not find that opinion persuasive because the plaintiff "had not been prescribed an assistive device for walking,

x-rays of his lumbar spine were normal, and his ankle and knee fractures had resolved." *Id*. Accordingly, the ALJ found that the plaintiff was capable of performing light work. *Id*. The plaintiff asserted that substantial evidence did not support that RFC determination because "no physician opined that [he] was able to perform the standing and walking requirements of light work." *Id.* at 728. The Sixth Circuit disagreed. It concluded there is no such requirement. *Id*. The Court explained, "to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Id.* at 728 (citing SSR 96-5p, 1996 WL 374183 (July 2, 1996))).

The Sixth Circuit later held the same in *Shepard v. Commissioner of Social Security*. 705 F. App'x. 435, 442 (6th Cir. 2017). In that case, the plaintiff argued "that the ALJ's RFC lacks substantial evidence because no physician opined that [plaintiff] was capable of light work." *Id.* Again, the Sixth Circuit explained that it was the ALJ's responsibility to determine the RFC based on "her evaluation of the medical and non-medical evidence." *Id.* (quoting *Rudd*, 531 F. App'x. at 728). The Circuit emphasized that an RFC is an "administrative finding" reserved for the Commissioner. *Shepard*, 705 F. App'x at 442 (citing SSR 96-5p); s*ee also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x. 395, 401 (6th Cir. 2018) (citing *Shepard*, 705 F. App'x. at 442–43; *Rudd*, 531 F. App'x at 728) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.")

In sum, the Court finds that the ALJ properly assessed the opinion evidence and did not err in crafting the RFC based upon her review of the relevant medical evidence. For these reasons,

11

the Court finds Plaintiff's first allegation of error lacks merit.

### B. Concentration, Persistence, and Pace Limitations

Plaintiff next assertion that the ALJ failed to properly account for Plaintiff's limitations in concentration, persistence, and pace. (Doc. 13, at 10). This argument also lacks merit.

The ALJ determined that Plaintiff could perform simple and occasionally complex routine, repetitive tasks, but not at a fast production rate pace and with no strict production quotas. (Tr. 20). Substantial evidence supports that determination, which incorporated findings from Drs. Delacour and Matyi, who found that Plaintiff was able to perform simple and repetitive tasks (Tr. 94, 115, 139, 160), and occasionally complex tasks with no strict time limits or production standards (Tr. 139, 160). Although the ALJ found that the findings from Drs. Delacour and Matyi were "not persuasive" because the severity of some of their findings were not supported or consistent with the evidence, the ALJ also found that "some" of their findings were generally consistent with the evidence. (Tr. 23). The ALJ thus permissibly relied on portions of their findings despite not finding them persuasive in their entirety.

For support, Plaintiff emphasizes her diagnoses of depression, anxiety, PTSD, and a learning disorder. (Doc. 13, at 10). But as the Commissioner correctly notes, a diagnosis is not dispositive of a functional limitation. *Owens v. Comm'r of Soc. Sec.*, No. 2:11–cv–267, 2012 WL 870732, at *1 (S.D. Ohio March 14, 2012) (explaining that "evidence supporting a diagnosis of severe impairment is not the same thing as evidence supporting physical and vocational limitations said to be caused by that impairment"); *see also Bruce v. Comm'r of Soc. Sec.*, No. 10–10426, 2011 WL 833792, at *3 (E.D. Mich. Mar. 4, 2011) ("A mere diagnosis does not establish a severe impairment or the existence of a functional limitation.").

In short, Plaintiff does not provide evidence, and the Court finds none after an independent

review, demonstrating that the ALJ failed to account for her concentration, persistence, and pace limitations.

## IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's non-disability determination.

IT IS SO ORDERED.

Date: July 1, 2021  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE